**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

**No. 24-CR-10353-AK**

| | |
|---|---|
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| **ADIKA MANIGO, et al.** | ) |
| Defendant | ) |
| | ) |

**DEFENDANTS' REPLY TO THE GOVERNMENT'S OPPOSITION TO THE JOINT MOTION TO CONTINUE AND REQUEST FOR RELATED DISCOVERY**

Now come the Defendants jointly and replies to the Government's Opposition to the Defendant's Joint Motion for a Continuance.

The government fails to acknowledge the late disclosure of exculpatory evidence, created six years ago, in violation of the Local Rules, the Rules of Professional Conduct, and the Defendant's constitutional rights. Rather, the government provides an inaccurate recitation of the proceedings, downplays the exculpatory nature of the evidence, and tries to shift the blame by citing the relatively short period of time it took for the defendants to jointly review the discovery. As a result of the late-disclosed exculpatory evidence, described in more detail below, the defendants also move for additional discovery, without which they will be denied their due process rights to a defense in this case and effective assistance of counsel.

Specifically, the defendants assert:

**1. The Late-Disclosed Evidence is Exculpatory.**

The video provided by the government includes not only a depiction of the items in the car, but also a conversation related to the defendant's arrest which the government mischaracterizes as a "small amount of evidence" that "shows items that were found in Manigo's rental car during the inventory search," and "a brief interaction among the officers at the barracks,[2] including agents who were participating in the federal investigation of Manigo. The officers described Manigo as being drunk." The government further states, "It is not clear why who was at the arrest matters. Regardless, the video shows who was at the barracks (Seaport) after the arrest (East Boston)."[1]

For this, the length of the video is irrelevant; what matters is the content. Most importantly, the camera continues to roll after the officer takes a video of the items in the car, unwittingly video and audiotaping a "hot mic" conversation between the officers regarding the circumstances of the stop and arrest of Mr. Manigo — the very matter which is at the heart of the defendant's motion to suppress. In Trooper Cavagnaro's report, she never identifies another police officer as being at the scene at the time of the stop of the defendant, but rather identifies Trooper Moore as appearing *after the defendant's arrest* on OUI charges. If true, this would make her the sole witness to the circumstances of the stop and the defendant's roadside testing in a case where there is no dash cam and no body worn camera. The defendant refutes the allegations against him, and any witnesses to the stop, the reason for the stop, and the roadside

---

[1] Government's Opposition p. 2 & fn2.

testing are therefore highly relevant to the case. The accidentally recorded conversation makes plain that this is untrue, however, where an unidentified officer (potentially Trooper MacDonald) states that “he loved the arrest” of the defendant, said “he almost hit me with his car”, and, pointing to the person recording the conversation (presumably Trooper Cavagnaro), said to the others present, “she had to have stopped literally where I talked to her.” All these statements suggest that the speaker (potentially Trooper MacDonald) was present at the time of the defendant's stop and arrest. And while this officer references the defendant's intoxication, there are no reports from this officer or any other indication as to how he would have first-hand knowledge of the defendant's mental state.

What the government either fails to either ignore or understand about the exculpatory nature of the evidence is that the conversation supports the defendants' position that Trooper Cavagnaro did not initiate the stop alone and impeaches her credibility in that she deliberately omitted the presence of another officer at the time of the stop in her report that purpotedly memorialized the stop, search and arrest of the defendant. The defendants have requested discovery on several occasions related to the stop and the investigation leading up to the stop, and have drafted a motion to suppress that argues that the stop was pretextual, so the importance of this evidence can hardly be lost on the government.

Furthermore a “special agent” is identified in the video as present in the barracks immediately after the stop, presumably Special Agent Haney. The defendants have requested discovery on numerous occasions related to the joint investigation by state, local and federal

officials, but the government has at all times denied the existence of a joint investigation. The presence of Special Agent Haney in the barracks immediately following the defendant's arrest would seem to undercut the government's position, and therefore also be exculpatory.

Finally, the depiction of the items in the barracks are exculpatory insofar as the box containing the safe that the trooper claimed was opened and searched is taped shut. This would seem to contradict the trooper's claim and therefore itself be exculpatory as impeachment material.

But even the length of the video is not irrelevant. For although the video of this conversation is **1 minute 40 seconds** as described in the metadata, the video abruptly ends. Preliminary expert evaluation of the video demonstrates that although it was initially created on October 15, 2020 (the date of the arrest), it was most recently modified on April 23, 2026 — four days prior to the last hearing when the government claimed it had received "hot off the press" only a single photograph and then afterward provided the hot mic video and related video shorts to defense counsel. Moreover, the April 23, 2026 date *is only the most recent modification.* Without further discovery there is no way of knowing whether the video was modified prior to April 2023. In other words, the defense is unable to determine without additional time to consult with their expert and additional discovery whether this is only a portion of the video or its entirety.

**2. The Government Downplays Its Role In Causing Delay.**

The government tries to shift the blame by citing the relatively short period of time it

took for the defendants to jointly review the discovery rather than the **522 days** that transpired between the defendants' arraignment on the charges and the government's disclosure. Pursuant to the L.R. 116(c) and the Fed.R.Crim.P. 16(a)(1), the government was obligated to provide documents and other objects relevant to the defense within 28 days of arraignment. Furthermore, the L.R. 116.8 tasks the government with notifying relevant law enforcement agencies of their discovery obligations. At the final pre-trial conference, the government incorrectly claimed that all discovery was complete. And even at the last status hearing on April 27, 2026, the government incorrectly claimed that the only photographic evidence outstanding was a single picture of a bottle of yellow liquid, without referencing the video that depicts additional evidence and "hot mic" discussions between the officers.

The government claims that on the last date the defense requested a "last-minute " and "unnecessary" continuance when the government was ready with all of its witnesses. However, the government fails to mention the cause of the Defendant's request was the government's last minute notice of the unavailability of Special Agent James Haney, the lead federal investigator on the case. Without Special Agent Haney, the defense was unable to proceed based not only on the fact that Agent Haney was necessary as to the *Franks* Hearing, but also,"to refute the Government's contention that the police had probable cause for Trooper Cavagnaro's stop of the Defendant for drug dealing, irrespective of whether she had probable cause to stop him for operating under the influence of alcohol."[2]

The government also claims the defense made "scattered discovery requests." In fact, the

---

[2] See, Defendants' Joint Motion to Continue Suppression Hearing, Dkt. 108, p. 3.

defense made numerous discovery requests, the vast majority of which were focused on the multi-agency task force investigation of the Defendant prior to the stop, the State Trooper's stop of the Defendant for an alleged OUI, and the search of the Defendant's vehicle — all of which led to the search of his phones inside the vehicle. Prior to the last hearing, the Defendant filed a Motion for Discovery which sought evidence that had long been outstanding.[3] The Defendant has always contended that the stop was pretextual, and initiated for the sole purpose of searching his vehicle and obtaining his phones—for which the police lacked probable cause. The government has consistently claimed that there was no joint investigation.[4] This video provides evidence to the contrary, and is responsive to the defendant's many requests.

Avoiding all responsibility for failing to timely provide this exculpatory discovery, the government suggests that the defense is responsible for the delay and should be forced to go forward as scheduled. The government's position ignores the many obstacles presented by multi-defendant cases with clients in custody in terms of their ability to review the discovery received, discovery requests needed as a result of the newly discovered evidence, consultation with experts, and consultation between counsel. In this case, Attorney Jeruchim has been on a lengthy trial in New Hampshire for the first half of May, and preparing for a homicide retrial during the last two weeks of the month, the defendant has been in custody with limited access to his discovery through no fault of his own, the person scheduling attorney Zoom meetings was absent for a week and on return had no availability for an additional week, as well as other personal and

[3] See, Defendants' Joint Motion to Continue Suppression Hearing, Dkt. 108, Ex 1.

[4] See, Defendant's Motion to Suppress, Dkt. 93, p. 4. fn. 3 & Defense Counsel's Aff. in Support ¶ 4(D).

professional conflicts between counsel.

The Rules themselves provide for extensive time in which counsel is able to review evidence prior to substantive motion practice and trial for good reason, most importantly being the Defendants' constitutional rights to due process and effective assistance of counsel. The government's position and feigned outrage regarding the defendant's request ignores these most basic principles and their own ethical responsibility. On this point, it is worth noting that the government opposed the Defendant's prior motion for additional time based on the unavailability of the investigating federal agent, even where it appears the government would have known about this exculpatory video evidence at least four days prior to the hearing but still failed to alert the defense or the Court of its existence.

**3. Additional Time Is Needed To Obtain Further Discovery and Third Party Records**

As a result of the late-disclosed discovery, the defense is seeking the following:

Any and all notes, reports, or other documents as to when the evidence was produced, what steps the government took to obtain the evidence prior to the status hearing, and how and when Trooper Cavagnaro first accessed the evidence.

A download of Trooper Cavagnaro's telephone, and/or any other device that was used to create the video, including but not limited to all information relating to the video, when it was accessed, whether it has been downloaded, whether it has ever been shared, whether it has been edited, any other indicia related to the video evidence, or any other evidence regarding the

defendant's case that has not yet been provided.

Any other notes, reports, or other documentation concerning the presence of state, local, or federal officers at the time of the Defendant's stop and arrest, including any police logs, notes, emails, text messages, or other documents.

The GPS information relating to Trooper Cavagnaro's vehicle and Trooper MacDonald's vehicle, which shows where they were in the two-hour period prior to the stop of the Defendant's car. (Preliminary research suggests that GPS tracking was placed in all state police vehicles as early as 2019.)

Any and all records related to the placement of GPS tracking in Trooper Cavagnaro's vehicle and Trooper McDonald's vehicle.

**4. Conclusion**

For the reasons stated, the Defendants respectfully request a continuance for the suppression hearing, to order the government to produce the outstanding discovery requested, and for such other and further relief as to this Court deems just and proper.

RESPECTFULLY SUBMITTED
The Defendant,
ADIKA MANIGO
By his attorney,

Dated: June 4, 2026

/s/ Victoria Kelleher

Victoria Kelleher (BBO#637908) Law
Office of Victoria Kelleher
53 State Street Suite 500
Boston MA 02109
Tel: 617-208-0505
Email: victoriouscause@gmail.com

Certificate of Service

I, Victoria Kelleher, do hereby certify that I have served the Defendant's Motion to Expand Time on all parties by ECF this day, June 4, 2026.

/s/ Victoria Kelleher
Victoria Kelleher