# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

No. 24-CR-10353-AK

|  |  |
|---|---|
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| **ADIKA MANIGO, et al.** | ) |
| Defendant | ) |
| | ) |

## DEFENDANT'S STATUS REPORT ON BEHALF OF THE DEFENDANT

Now comes the Defendant Adika Manigo who asserts the following related to the status

of the potential conflict in this case and other matters before this Court:

### I. Conflict of Interest

1. The investigation of the Defendant for the instant offense was predicated on

information provided by a confidential informant, who asserted not only that the Defendant

Manigo was then engaged in drug distribution, but that on a prior occasion when the CI had

been prosecuted for trafficking in cocaine, the Defendant was his drug source. An audio

recording of the interview between Boston Police Officers and the CI was provided to the

defense as part of discovery in the instant case. The CI was never identified, and undersigned

defense counsel was unaware that she had previously represented the CI.

2. On June 4, 2026, counsel for the Government notified the defense that undersigned

defense counsel had previously represented the informant in East Boston District Court on drug trafficking charges. Further investigation revealed that undersigned defense counsel had represented the informant not only in East Boston Court but also on two separate cases in Suffolk Superior Court, including the very case that the informant claimed the Defendant Manigo had sourced him the cocaine years earlier. Those charges emanated from 2005 and 2006, during which time undersigned counsel represented the CI until he plead guilty in 2007. Between 2012-2013, defense counsel again represented the CI in Suffolk Superior Court on a motion to vacate his guilty plea due to the Hinton Drug Lab scandal where Annie Dookhan was employed and tested the drugs in his case. Defense counsel withdrew from the CI's cases in March 2015.

3. Defense counsel acknowledges a continuing duty to her former client despite the client's death. On this point, defense counsel has consulted with the BBO and rules of professional responsibility as to her continuing duty to her former client as well as her duty to zealously defend Mr. Manigo.

4. Defense counsel is uncertain whether the CI's file still exists given the passage of time and changes in storage location. Moreover, defense counsel has specifically not searched for the file in order to preserve all privileged information it may contain. All investigation concerning defense counsel's representation of the CI are based on review of publicly available dockets.

5. Based on the foregoing, defense counsel does not perceive any actual conflict of

interest.

6. After consultation with the Defendant Manigo regarding the potential conflict of interest and any appearance of a conflict of interest, and having advised the Defendant about the limits of defense counsel's ability to investigate the CI due to the privileged nature of any communications contained in the file, the Defendant Manigo waives any conflict of interest.

**II. Pending Discovery Motions**

7. The Defendant has filed two discovery motions docketed as #121 "Joint Motion to Continue" and #125 "Joint Reply" based on late-disclosed evidence provided to the defense on April 27, 2026. Specifically, on that date the government provided an audio and video recording created by Trooper Cavagnaro, the arresting officer, that initially depicts physical evidence obtained during a search of the Defendant's vehicle and later a "hot mic" conversation between Trooper Cavagnaro and unknown officers and/or federal agents concerning the Defendant's arrest. Prior to the disclosure of this evidence, the defense had asked on numerous occasions for the Government to produce photos and videos concerning the search of the motor vehicle in this case, and at all times the government asserted that no such photographs or video existed.

8. On April 27, 2026, the same date as the status hearing, the government produced for the first time, without explanation, photographs and videotape of the sally port area at the State Police barracks where the Range Rover was searched. The videotape was taken by an unknown officer, though presumably the arresting trooper, and included depictions of property allegedly contained in the Defendant's vehicle, other unknown police officers, and conversations about the

search, the investigation, and the Defendant's arrest. The discussion indicates that another officer was present at the time of the defendant's arrest, which is contrary to prior assertions by the government and also omitted from the arresting officer's report. The presence of the additional officer comports with the defendant's theory of the stop and impeaches the statements of the arresting officer, and thus defense views this evidence as exculpatory. The physical evidence is contrary to reports. The existence of the videotape evidence was completely unknown to the defense prior to the April 27, 2026 disclosure.

9. Based on the late-disclosed evidence regarding the video tape, the defendant has moved for disclosure by way of a report or other written notice that provides the identities of all law officers in the video; their discussions regarding the defendant's arrest; any other notes, reports, or other documentation concerning the presence of state, local, or federal officers at the time of the Defendant's stop and arrest, including any police logs, notes, emails, text messages, or other documents; and what steps the government previously took to obtain the evidence and why the evidence was not turned over prior to April 27, 2026 — six years after created.

10. Based on the newly discovered evidence concerning the CI, the defense intends to file additional discovery motions concerning information previously provided by the CI to the Boston Police, as indicated on the audio recording, which was not pursued by the US attorneys office due to the CI's purported lack of credibility — including whether the previously rejected information pertained to Mr. Manigo.

11. Additionally, the defendant will seek third party records including the GPS

information relating to Trooper Cavagnaro's vehicle and Trooper MacDonald's vehicle,[1] which shows where they were in the two-hour period prior to the stop of the Defendant's car.

11. Moreover, the Defendant intends to consult with her expert to determine whether Trooper Cavagnaro had accessed it prior to April 27, 2026, and whether the video was edited and/or cropped prior to disclosure. For this, the defense will need a download of Trooper Cavagnaro's telephone, and/or any other device that was used to create the video, including but not limited to all information relating to the video, when it was accessed, whether it has been downloaded, whether it has ever been shared, whether it has been edited, any other indicia related to the video evidence, or any other evidence regarding the defendant's case that has not yet been provided.

<div style="margin-left:50%">

RESPECTFULLY SUBMITTED
The Defendant,
ADIKA MANIGO
By his attorney,
 /s/ Victoria Kelleher                 
Victoria Kelleher (BBO#637908) Law Office of Victoria Kelleher
53 State Street Suite 500
Boston MA 02109
Tel: 617-208-0505
Email: victoriouscause@gmail.com

</div>

Dated: June 22, 2026

---

[1] Troopers in the Tunnels Barracks had their cruisers outfitted with GPS in 2018 in the wake of the overtime scandal in which 30 State Troopers, all of them from former Troop E (which covered the same barracks at issue in this case) were found to have fraudulently claimed thousands of dollars in overtime.

<u>Certificate of Service</u>

I, Victoria Kelleher, do hereby certify that I have served the Defendant's Motion to Expand Time on all parties by ECF this day, June 22, 2026.


<div align="center">

<u>/s/ Victoria Kelleher</u>
Victoria Kelleher

</div>